Announce the three cases that will be argued and then the call the first case of excuse me counsel if you would give us a chance The following cases are scheduled for argument this morning Wednesday, June 7th 2017 16 34 98 Southern District of Iowa United States versus Jason Springer 16 36 95 Southern District of Iowa United States versus Rick McIlnick 16 33 89 District of Nebraska Kirk Vestor versus Daniel Halleck in 16 32 38 District of Minnesota United States versus Rex Furman the first cases for argument are 16 34 98 and 16 36 95 United States versus Jason Springer and Rick McIlnick Thank You miss Michaels now counsel you may approach and Good morning, you may proceed I'm Judith O'Donohue and I represent my clients who are present. Mr. McIlnick and mr Springer on a case that has been appealed from conviction for a violation of 18 USC section 1344 subsection 1 the bank fraud fraud statute the first issue that I wanted to address is what is actually being charged as the scheme to defraud a financial institution and I think that if you look at the indictment and the instructions it appears that the scheme is filing a false HUD one Settlement statement, but I think if you look at the evidence that was presented at the time of trial it looked to me like the government was trying to prove that the individual mortgage holders or their servicers Could have obtained more money and should have been advised by the defendants one or more of the defendants That there was a resale in the wings that was for more money I don't think that was charged and I'm going to try to address my jurisdictional arguments just to this settlement Statement because I think that's all that was charged to me like you're making a variance argument I don't I don't recall there being a variance argument and it was issued to in the brief there was a variance argument and I I did make a variance argument and I'm starting out my discussion with that Because I think you have to know what the scheme is They were one count was withdrawn so it was actually eight counts but only seven counts It was essentially a special interrogatory on whether there was a false HUD one statement yes Yes, that's correct and I put the scheme and the indictments alleged to certain a number of means that were resorted to to result ultimately in this alleged false HUD one statement, isn't that right? Well, you know, I didn't interpret it that way because we're looking at two defendants We're looking at an attorney who is a closing attorney for and I'm trying to close the a to b transactions And then we're looking at a realtor who signed one affidavit with respect to one Particular transaction. I'm sorry. How do you say the gentleman's name Maka when you? He was charged with only one count, right? But clear to me that that he was Was he didn't submit any kind of no, no, we didn't what's more is there's no proof that he ever saw Led to such a thing and so he was Aiding and abetting in the production of false. Is that was that the theory? Well, I think that had to be the theory. I don't think it was proved clearly That way Not really, but that's a very interesting question. I appreciate that What was actually argued to the jury and this is why since I wasn't trial counsel I found the whole case a bit confusing is that they lied So everything was they lied they lied they lied and they didn't really try to tie it up with a potential for a loss To the bank or any particular intent with respect to getting something of value I mean in a rough, but yeah, I'm interested in this question of how exactly this gentleman's case was was segregated or differentiated for the jury and final and the closing arguments was there Well that I mean I'm a directives argument with respect to this and asserted Some kind of aiding and abetting Well, that wasn't let me back up aiding and abetting was submitted in the jury instructions But the way the closing argument was framed. It was just that it was a lie That he lied because he said that you know They had made some improvements and that's going to justify the fact that there's no Profit on the second sale. That was the content of the affidavit that they pointed to yes So, yeah, anyway, I and perhaps because I wasn't trial counsel I found it extremely confusing, but I think to make the legal arguments It's necessary to kind of focus on the HUD one and I don't think aiding and abetting on the HUD One has anything to do is mr. McIlwain yak. He never saw it He never was told about it. He didn't sign it. He wasn't at the closing the only Relevance as far as mr. McIlwain yak was concerned is that the one individual who testified for The service or GMAC who had some personal knowledge said that she wouldn't have gone ahead without the affidavit With the closing. However, the affidavit wasn't required by the owner of the mortgage, which was FHA And they had already foreclosed GMAC had already foreclosed on the mortgage So they had an option to sell it at a sheriff's sale if that's what they wanted to do And they didn't go forward with it So my suggestion is that you know, there isn't really any proof that it without that affidavit. They wouldn't have gone forward Because they didn't want to sell it at a sheriff's sale and they thought the fifty seven thousand six hundred dollars They got for it was better than they would get at the sheriff's sale So, I mean, I don't think there's really been any proof that you know the bank or we are that's a whole nother issue The GMAC wouldn't have gone through with it without that affidavit except for a statement made by the lady Not required by HUD. So if they know there was a willing buyer out there willing to pay more Now that's a very interesting question, and I appreciate it They aren't buying the same thing The second people closing on the second are buying things that have been somewhat fixed up cleared up with a guarantee that You know There's not going to be any mortgages or other liens a lot of these properties had second mortgages or judgment liens or delinquent taxes These all had to be cleared up By someone and they were in this case cleared up by the trust through the efforts of mr Springer so I don't think it's the same thing and I don't think that the government even tried to say it's the same piece of Property, you know, this was a difficult time for people looking to buy real estate Because you know mortgages turned over from one person to another person to another person on a short sale They were always throwing in these various requirements for a short sale. A lot of buyers wouldn't if they knew it was a short sale They'd say forget it I'm not even going to try to do an offer on it, it's too problematic We'll have to wait six months And we may at the end of the line not get it people usually want to buy a house want to buy a house So no, I don't think it was the same piece of property Now I'd like to revert back to my jurisdiction argument. I do think that the Government made some effort to prove that the institution That received the HUD one Was an FDIC Institution, but I don't think they quite got there and the problem is I think the best evidence in this case of who the Mortgage holder was is who was foreclosed who was the entity? That was named in the foreclosure petition that were pending at the time of these sales Not some statement very broad statement made by a witness regarding it. So for example in First Avenue The witness mrs. Zener indicated that it was Wells Fargo but in fact there was a pending foreclosure action and it was brought the name of Wells Fargo Financial, Iowa 3 Inc and You know this I could go on for every single transaction The the people that were testifying except for ms. Bonowitz had no personal knowledge And they didn't know what entity actually owned the mortgage and I don't think that's going to be sufficient to prove Jurisdiction here. If you look at the cases that have been cited There thank you your honor, I appreciate that That's a good question I think they're both and That for that reason I think I can raise it at any level didn't have to be raised in particular at the trial court level G Mac Who it is it's supposed to be the Mortgage lender or the or the FDIC insured person. Yeah, I know that is a bit confusing I think with respect to that it was there a motion for a directed verdict on this there was made by mr Whalen who is the public defender for mr. McIlwain? But to be fair to the government the government switched the argument from the FDIC to that it was a mortgage lending or institution or corporation, I guess it was and that I found very Well My argument is that they didn't prove it was a mortgage lending business either And at the time of the directed verdict the government pointed to the testimony. Mr. Martin from HUD But if you review his testimony, he really didn't say a whole lot He said that GM AC was an approved lender By FHA on their list and they made lots of loans and they were in various states I don't think that rises to the level of the requirement that it's affecting interstate commerce you know, I looked at USB Jones, which I didn't cite in my brief and I think there was a similar Eighth Circuit case where I think you have to show something more than just That they did business in a variety of states. I don't think that equals activities affecting interstate commerce and Record is I'm not clear that What's the difference between GMAC and GMAC mortgage and GMAC mortgage LLC? We're supposed to assume they're the same we are and I think if you look at USB Alexander I think that the court decided you cannot do that. Yeah Thank you. I I had reserved ten minutes. So I have to quit the podium. Thank you very much for your attention. Very well We'll hear from the government Mr. Cook bomb Good morning, may it please the court? This appeal raises a host of issues. Most of which were not raised in any form at the trial, but in any event Having raised them on appeal None of them have merit and I will start with the aiding and abetting theory with respect to mr Makahonic a judge Arnold the government did indeed argue the aiding and abetting theory at trial We argued it quite clearly and the theory was this it's found on page 1317 of the transcript. That's the portion of our closing argument where we address this the argument was that mr Makahonic aided and abetted the execution of this scheme by signing this false affidavit It was an anti flipping affidavit and the affidavit said that there was no agreement to no Agreement currently in place to resell the house at a higher price There explicitly was such an agreement currently in place. So that affidavit was simply false There was an agreement to buy the house for $65,000 I'm sorry, and there was evidence that he knew that I think there was powerful evidence that he knew it because he was the realtor For both transactions. So in other words, he was the realtor on the transaction in which Nate Smith bought it for 65,000 and then he was the realtor the same day for the second transaction, which he sold it for $86,000 so there's no question that he knew that that affidavit was false and the Signing of that affidavit was necessary to the execution of this scheme because it was necessary to the closing of the short sale transaction the representative from GMAC Testified that that affidavit was an absolute requirement for the short sale to go through. So mr Makahonic took a step that was necessary to the ultimate execution of the scheme and thereby aided and abetted the scheme That's that was what we argued and that's what the evidence showed. Okay. Well that essentially mentioned GMAC. I'm looking through the the record, it's hard for me to tell whether the Theory was that the false statements were made to GMAC or GMAC mortgage or GMAC mortgage LLC or if they're all the same or if there was evidence they were the same I don't They were they were treated the same by both parties at trial your honor The the government called a witness from GMAC mortgage And that witness testified about GMAC But further the government heard testimony from an official with HUD about this same company and there was only one Well, I think Alexander is a different case for a couple of reasons One is that in Alexander the government only had a stipulation And so there's a stipulation that Bank of America is insured by the FDIC Alexander was a false statement to a bank case There's a piece of paper where the false statement occurred and that piece of paper says Bank of America and a and so the question Alexander is is Bank of America the same as Bank of America and a but we don't have a single piece of paper here We have a larger scheme involving a number of falsehoods Identify someone to whom the false statement was made before you the offense is made out, right? And we did we identified GMAC mortgage in the indictment the jury was instructed that they had to find that the false statement was made to GMAC mortgage the jury was instructed that they had to find that GMAC mortgage was a mortgage lending business and The the witnesses referred to GMAC by shorthand at trial as GMAC Which is not unusual to not use the full name of an entity, but there are a lot of these names floating around here I think it's Probably the better the Sure that the same collection of words is used throughout the testimony because otherwise the thing Begins to go off in different directions. I take the court's point I think that that becomes clear when this issue is raised for the first time on appeal and and I would Further point out that in the end. There was no argument at trial that we had multiple entities indeed Mr McIronic's attorney got up in his closing statement and said we're not really seriously fighting in this case about whether or not GMAC was a mortgage lending institution. This would be a plain error at best is what you're saying Yes, and and and that's so just to get the record site. That's in the transcript at page 13 42 and 1343 and to be clear the evidence from the HUD witness was the GMAC was a lender That it was that it made hundreds if not thousands of mortgage loans that were approved by the FHA and that it made those loans In states across the country that is more than sufficient to show that it is a mortgage lending business. There was no contention In the end that there was some other entity that that belonged to this transaction And I think that's true more generally for all of these transactions. Indeed. It was part of the defense in this case All of the other institutions were FDIC insured So GMAC is the only mortgage lending business and part of the defense strategy was that these were large sophisticated national big FDI insured banks and they were big boys and they could make their own decisions about whether these Short sales were a good idea and they weren't really defrauded by these little guys in Des Moines That was the defense theory. And so the not not only did the defense not challenge this issue But there was a joinder of the parties on this issue that we were there. There was no motion for judgment of acquittal on this basis Mr. Makah onyx lawyer did make a rule 29 motion at the conclusion of the government's case Then in his closing, but that was denied then in his closing he conceded the point He did he did raise it on this base He did he did your honor and then got up at closing and said that we're not disputing the GMAC is a mortgage lending business Which implicitly includes at the concession that GMAC is the right entity here. It's the only entity the parties discussed What was the defendant? What was it? What was the defense theory at trial that these? Two people defendants were just debt players played cameo roles for this whole thing. Well, that was part of the theory that these banks bargained for you know made Independent economic assessments about whether these transactions were a good idea and decided that they were so they were not harmed defrauded that was a Common theme from from particularly from mr. Springer And mr. Mac a Hanuk had a number of arguments most of which I think frankly He's abandoned on appeal. One of his arguments was that the affidavit he signed was literally true That that was not supported by the evidence. But in any case he does not appear to be pressing it today Didn't the witnesses generally testify in each instance that the FDIC insured entity That was involved was the one that was going to lose money. Yes So in in each case We had representatives from these banks saying that the bank was either the holder of this mortgage Or the servicer of the mortgage that the bank approved the short sale and that the bank lost money on the short sale and or in the case of those banks that were merely servicing these loans the We specifically asked those banks did their institution face the risk of loss as a result of Did you make the link that the the institution that was going to make the loss? Was the one that was FDIC insured? Yes, so in each in each instance Yes So there were two alternatives one alternative was that the institution owned the mortgage in which case all of those witnesses Testify that they lost money on these short sales Although we don't think that they had to lose money in order to show you say institution you you mean the FDIC Insured institution. Yes, and maybe if I could just briefly go through each count. It might be helpful to the court So count one involved Wells Fargo and the jury heard testimony from a Wells Fargo Representative who said that Wells Fargo was insured by the FDIC That Wells Fargo was the investor who owned this mortgage that Wells Fargo approved the short sale and that Wells Fargo is the Institution that lost money in the short sale. None of that was contested at trial ever And the jury was entitled to credit it Count to involve Bank of America There are two different ways that the jury could have found that we met the element with respect to that count First the manager from Bank of America said that Bank of America was servicing this loan and that the owner of the loan Was Wells Fargo and I've just explained to you that the jury heard testimony that Wells Fargo is FDIC insured So that's one path which was not disputed the second path was the Bank of America who was servicing the loan was also insured by the FDIC and the Employee of Bank of America said that Bank of America approved the short sale and Bank of America faced a risk of loss Because of their servicing agreement with Wells Fargo that they could be forced to buy back the loan for example If there was fraud that they didn't catch and so we none of that was contested either With respect to count three and I'll go through the rest of these a little bit more quickly US Bank a bank employee said that US Bank was insured by the FDIC US Bank was servicing this mortgage It was owned by Freddie Mac US Bank testified again that they faced the risk of loss because of a buyback provision again There was no dispute about any of that at trial. Nobody suggested that we alleged the wrong victim counts four and six involved City Mortgage There was testimony that both of those loans were owned by Citibank North America Which the parties and the witnesses referred to as Citibank? that Citibank was insured by the FDIC and We alleged City Mortgage as the victim because it was Citibank's mortgage subsidiary it Handled mortgages for Citibank and there was testimony from which the jury could conclude that City Mortgage was an alter ego or a wholly Owned subsidiary of Citibank, which is sufficient and I will not Make the court march through by analysis of that testimony, but it is Prevalent in the record and then I've already talked about GMAC the last count Count eight is JP Morgan Chase an employee a vice assistant vice president from Chase said that he was going to refer to JP Morgan Chase as Chase He testified that Chase owned this mortgage Approved the short sale the chase was insured by the FDIC None of that testimony was challenged Indeed, as I said the defendants wanted to emphasize that these were large and sophisticated banks I want to briefly address the variance issue That my opposing counsel began with there was no variance here because The indictment described the exact scheme that we proved a trial. It was an 11 page speaking indictment It laid out all of the falsehoods and misrepresentations That we ended up did it lay out a short sale scheme or did it lay out just a scheme to submit false? HUD statements it laid out a short sale sale scheme in The record at docket number two the HUD's the false HUD statements were just in furtherance of that scheme They were the specific executions of that scheme, but the broader scheme Included all of the misrepresentations that miss Donahue is complaining about they included the fact that this Scheme was meant to deprive the banks of the higher sales price All of that is contained in the indictment and so for the first time I think in her reply brief Miss Donahoe suggests that all of those paragraphs of the indictment were just surplus and that the only part of the indictment that should stand Are the executions? The problem with that argument is I think it's waived because it was raised for the first time in the reply but also The defendants certainly had an opportunity to move to strike pages, you know, one through seven of our indictment. They did not And the jury was properly instructed on it And I would say finally there's just no support for the idea that a scheme can be no broader than its specific Executions indeed. It is commonplace for the government to prove up particular executions that are part of a broader scheme probably if the execution alone had been Had been the subject of the indictment. There would have been a motion for a bill of particulars All right without a doubt there would have been your honor Essentially larding the indictment up with these facts about so as to avoid that difficulty we made Crystal clear the government's theory and the theory that the government would proceed on a trial We did that in the indictment to avoid exactly that problem and we gave the defendants notice Very fair notice of the scheme and it was properly charged and again Reduced to its simplicity. What was the government's theory? Presented to the jury Yes, your honor The government's theory was that the defendants lied to these banks in order to induce them to agree to short sales That was the government's theory And to what extent did you establish a dollar figure as far as far as any loss was concerned? Well, we sought to prove up that dollar figure at sentencing But but the rough dollar figure that we relied on at the trial was the difference between what? These defendants bought the house for in the short sale. So in the GMAC example, they buy it for $65,000 they sell it the same day the same house for 86,000 and we argued to the jury that the bank was entitled to the benefit of that higher price Which we argued was the market. What about what about the argument that it's two different properties? Well, it's not it's the same property. It's a house sitting on 56th Street in Des Moines, Iowa in Urbandale I believe in Iowa and if it was two different properties then the bank Didn't the bank agreed to a short sale on that house and that short sale happened on a specific date the same date that the resale transaction happened So if the property somehow changed then in agreeing to the short sale the bank agreed to a short sale on a different property I'm not I'm not sure. I totally understand the argument, but it's something along the lines of the second sale is free of liens and other Potential encumbrances and that's different than the short sale I think that's ultimately an argument about whether the banks actually lost money The argument is look the bank would have had to go into foreclosure Proceedings that the defendants were actually doing the banks a favor because in the end the banks didn't want to foreclose on these houses They wanted to get rid of them in these short sales I think that's really what the argument is getting at and that certainly was part of the defense at trial I'm going to ask what was the theory of the defense and now you've just told us As you point out In effect, what were the arguing no harm no foul or well They didn't say it like that because they didn't want to get up and say jury, please nullify But that that was the I mean that was one of the arguments. There's no doubt about it The problem with that argument is that the defendants we can argue if we want about whether the banks lost money or the district court Ultimately found its sentencing that the banks did lose money, but that it was too hard to calculate it with precision But none of that mattered for purposes of whether the government met the elements here The defendants still made false statements to these banks to induce them to agree to these short sales and for defendant Springer Those false statements were the HUD one statements that were the executions of this scheme And I'll just very briefly explain the government's theory about that and what we proved What the evidence showed was that all of those HUD one statements were false the mr. Springer knew they were false All of them said that Nathan Smith or another defendant brought money to the closing That is what the HUD statement says. That was never true Mr. Smith never had money to pay for these short sales He had to wait to resell the house The same day or a couple of days later at a higher price and use that money to fund his first transaction Every representative from every bank said that if they had known that those HUD ones were false They would not have approved these short sales if they had known that Nate Smith was going to resell that property For $20,000 more in one case nearly a hundred thousand dollars more. They would not have approved those short sales That was our theory. That's bank. So what is the thing of value that they were deprived of well There's no question that they were deprived of their security interest in these properties, that's what the mortgage is. It's a lien It's a security interest and when the defendants induced the banks to agree to the short sale They induced the banks to agree to give up that security interest The jury couldn't possibly have found fraud unless it found that that happened because that was the only theory on which we proceeded a trial so Property interest is the interest in the mortgage and that is explicitly how we charge in this case It was fraud to induce banks to agree to short sales That's how we argued it and that's what the evidence showed. There was no variance. There was no alternative path to conviction Unless there are additional questions. I will ask the court to affirm the convictions in this case in these cases theoretically The statements were false And the banks lost no money for some reason Was it still a crime? Yes, and that falsity is falsity Morally I guess it is Well, so this I guess we shouldn't worry about theoretical possibilities I could agree with the court that that case might not have an enormous amount of jury appeal You might argue about what I doubt that you would that the government well Who knows what they got whether the government would try to make an example out of these people or whatever the government does I think the law is plain that actual loss and intended loss are not requirements under subsection 1 of 18 USC 1344 Probably captured under materiality, right? Yes. I think that's right and As we argue to the jury You don't get to lie to banks to cause them to give up something of value and then say no harm No foul Congress has prohibited that so that that is in fact explicitly the appeal we made in our closing Mark, that's a material fact. I guess is that the idea? Yes, and in that case the banks all testified Yeah, they wouldn't have done it if they don't yes, Your Honor Thank you, thank you for the argument I Wanted to talk just briefly about the jurisdictional argument, it's not plain error You can raise it any time and it doesn't matter whether I raise it on appeal or what case says it's jurisdictional well, a a would a y e w o h Usva would which is a First Circuit case is the is the prime one Isn't it just an element of the offense and it's either proven or it's not no, it's jurisdictional if you cannot prove it There's no federal crime Jurisdictions decided at the time. It's filed, isn't it? No, I think jurisdiction is has to be proven as a part of a case. You have to prove you have the jurisdiction And I don't think they did prove it and I think I am able to raise it at any time and there's not a different So if there was no proof of a false statement, which is an element of let's assume it's an element of well That's not jurisdictional. What's jurisdictional? Is that it has to involve a federal? Interest and so it's either got to be an FDIC in this case FDIC insured Well, but I think you you don't have an offense if you haven't proved that it's connected to something that's a federal interest FDIC Well, I think it's because of jurisdiction but obviously, you know you everybody's in and entitled to their own opinion Well, they didn't prove that the first of all they didn't really prove what the false statements were Okay, so we heard the government say well it was they didn't tell The banks that they could that they had or could line up these other sales The first thing you have to look at there. Is that did any of these entities have a resale? restriction None of them did except GMAC There was one that had a paragraph 10 That was Kenyon had a paragraph 10 that had something about sale restrictions Don't resell within 30 days in the offer. I don't think as a closing attorney There was any way you would have noticed that nobody mentioned it Except you know in question at time of trial. I don't think that was clearly Made an element of the transaction. So the only Transaction that had a resale restriction of any kind was GMAC and as I pointed out before GMAC was just apparently Deciding they wanted this affidavit and HUD specifically said they had a waiver. They don't care when you resell it They did have a restriction that they wouldn't finance if it was resell within 90 days and they waived it during this period of 2010 and 2011 So I don't see and there's nothing on the HUD that says we have to declare if it's going to be resold Contemporaneously or otherwise so what the government did at the time of trial and say hey guys We're switching theories now what we really believe is that they lost money because there was a potential that they wouldn't be paid off by the ultimate Transaction. So for example, if the B to C transaction had fallen through there wouldn't be money going to the bank and my point There is hey, there's no loss First of all on the first three transactions charged Jason Springer paid the mortgage off out of his own trust account not out of any funds received from the B to C transaction and He was a guarantor of the title. He did a title opinion. There was some testimony there from the title guarantee He is on the hook anyway, because he said he was going to be able to get clear title through that property He'd have to pay it regardless the banks were never at any risk of loss From the fact that the they didn't have cash and then that got all cobbled up Is it cash or is it a check or? Does it have to be funds directly from the borrower could be funds from a mortgage another mortgage? I mean it was one of the most ridiculous records I've ever seen if you know how to close a real estate Transaction doesn't make any sense Nobody cares whether you have a bag of cash when you've got a mortgage with your aunt Josie's giving you some money They don't care the purpose of the HUD if you look at it It's just to say we're taking this much money in and we're paying these things out and at the end of the day You're gonna have clear title and one other thing. I wanted to say about this lost business is If the banks didn't get paid they didn't have to release their mortgage. There was absolutely no possibility of the banks losing any money Related to whether it was a cash or a personal check or whatever. No, Jason was on the hook for it He had in fact paid three of the transactions out of his trust account without getting the funds You make it sound so crystal clear from your standpoint, but if it was that why wasn't this fought out at the district court? Well, I can't answer it because I didn't try it. I have a theory which I will offer which is I think most of these Attorneys are very intelligent. They know what they're doing, but they never did the nuts and bolts of a real estate transaction You know, I'm from a small town in Northeast, Iowa, and I do about 20 of them a year for 40 years I've done plenty and you know, I just don't think they understand the nuts and the bolts of it. There was absolutely no way That they could have lost any money by virtue of how they closed the transactions whether they were Opinion that's in the record. He's on the hook that the theory was more of You know not necessarily that they were going to lose money, but they lost the opportunity to make more money Given that there were these willing buyers out there willing to pay more in the short sale situation Okay, and you know, I understood that as well. But what I would answer to that is What application did anybody? My my defendants in particular, mr Springer and mr McEwney a calf to run to any of these loan servicers, which mostly they were loan servicers rather than Mortgage holders and tell them hey, there's going to be a resale Like I say, they didn't have any resale restrictions except for the GMA see and I don't think they proved Jurisdiction in that case and I don't think they proved the GMAC wouldn't have gone forward They foreclosed already on the property. They could have done a sheriff sale before Deciding to do the short sale. So obviously and I think from the testimony They appraised the property and they thought that was a good deal So, you know at the end of the day what false statement got made? And by mr. McEwney. Yes. He did know that it was going to be closed I'm not arguing that because he was representing the buyer. This is why he got himself involved He represented the buyer on the B to C sale. And so, you know, his main incentive was to try to avoid Having the whole thing fall through for the people that he knew and he was representing But and I agree that I did waive the argument on appeal Regarding the falsity of the affidavit and the reason that I did was because I have to interpret the facts in the light most That but I don't think it matters I don't think they proved that mr. McEwney Made a false statement other than that one affidavit to GMAC Which I think didn't have anything to do with the price of tea in China because it wasn't required by HUD She testified HUD made the final decision and if you look at the paperwork There was a sheet from HUD that said it was okay to go ahead at the price They went ahead and there was specific testimony from Martin. We don't care when you resell it There's no restrictions. So I guess at the end of the day, I think this is a a Paper tiger. I mean, they're building it up and they're switching Boogeymen from one count to another They just lumped it all together for example I didn't hear them ever explain whether there was resale restrictions or not except for the GMAC and There turns out there wasn't and so what was it that induced or required? Mr. Springer or mr. McEwney it to tell the bank say there's another Closing out there and what difference did it make if it was one day five days ten days or whatever? Later because there was no sale restriction. I mean, I think we've basically ended up cooking up. We didn't like The fact that they made more money and we want to punish them. I think that's at the end of the day That's the whole case and I don't think it has any merit and I wish you would reverse it. Thank you Thank you for the argument on both sides. The case is now submitted and we will take it under consideration